SHORTESS, Judge.
St. Mary Parish (plaintiff) filed suit for declaratory judgment and injunctive relief against the State of Louisiana (State) asserting a claim under Louisiana Constitution article 7, § 4(E), to one-tenth of a portion of “all royalties or other funds” derived from mineral revenues and received by the State pursuant to the 1986 amendments to 43 U.S.C.A. § 1337(g).[1] Thereafter, the State filed a peremptory exception of no right of action questioning plaintiff’s interest or standing to assert any right or interest in these funds. The trial court sustained the State’s exception and dismissed plaintiff’s suit finding plaintiff had no right of action to claim ownership of any of the funds since they were derived from federal leasing activity beyond the State’s coastal boundary. Plaintiff appealed and contends the trial court erred in maintaining the exception.
BACKGROUND
In 1953, Congress passed the Submerged Lands Act (SLA), 43 U.S.C.A. §§ 1801-1315, and the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C.A. §§ 1331-1356. The SLA granted coastal states title to and ownership of the submerged lands and natural resources adjoining their respective coasts. The SLA also confirmed federal jurisdiction and control over the natural resources of the seabed of the continental shelf lying seaward of state boundaries. The OCSLA reconfirmed federal jurisdiction and control over the natural resources and seabed of the outer continental shelf, and authorized the Secretary of the Interior to issue oil, gas, and other mineral leases for these submerged lands.
For most coastal states, including Louisiana, the SLA grant extends seaward from the coastline a distance of only three miles. United States v. Louisiana, 363 U.S. 1, 121, 80 S.Ct. 961, 4 L.Ed.2d 1025, 1096 final decree entered, 364 U.S. 502, 81 S.Ct. 258, 5 L.Ed.2d 247 (1960). However, because oil and gas reserves can straddle the jurisdictional boundary, controversy arose as to the proper allocation of royalties derived from such pools underlying both federal and state lands.
*877 In 1978 Congress amended the OCSLA and completely restructured federal-state roles relating to the exploration and development of the outer continental shelf. The amendments added a new version of section 8(g) which initiated new procedures for the orderly and efficient leasing and development of federal offshore lands situated within three miles of the seaward boundary of coastal states (the “8(g)” zone). 43 U.S.C.A. § 1337(g) (1978). In addition, new section 8(g) provided for a “fair and equitable division” of those mineral revenues derived from federally leased areas within the 8(g) zone which may contain oil or gas pools underlying both federal and state lands. See 43 U.S.C.A. § 1337(g)(2M4) (1978).
Litigation soon ensued over the proper allocation of these revenues. The states and the federal government also failed to agree on the interpretation of section 8(g). In 1986, Congress again amended the OCS-LA and eliminated the “fair and equitable division” problem by providing for a 27 percent/73 percent sharing of all “bonuses, rents, royalties, and all other revenues” derived from federal leasing activity within three to six miles seaward of a state’s boundary. See 43 U.S.C.A. § 1337(g) (1986). The 1986 amendments, commonly known as the “8(g) settlement,” were intended to permanently settle the dispute oyer the proper allocation of the outer continental shelf mineral revenues and to put an end to the litigation.
NO RIGHT OF ACTION
Plaintiff contends the trial court erred in granting the State’s exception of no right of action and claims it is entitled to one-tenth of a portion of “all royalties or other funds” derived from the “8(g) settlement” based on the provisions of Louisiana Constitution article 7, § 4(E). That article provides in pertinent part:
One-tenth of the royalties from mineral leases on state-owned land, lake and river beds and other water bottoms belonging to the state or the title to which is in the public for mineral development shall be remitted to the governing authority of the parish in which severance or production occurs.
Plaintiff argues that since the southern boundary of St. Mary Parish is coterminous with the southern boundary of the State of Louisiana, then minerals produced from areas north of the three mile limit and within the boundaries of the State of Louisiana, between the east and west boundary lines of St. Mary Parish, are therefore developed from within St. Mary Parish.
Under the above-cited provision, plaintiff is clearly entitled to one-tenth of the royalties derived from “mineral leases on state-owned land, lake and river beds and other water bottoms belonging to the state” when severance or production occurs within its parish boundaries. However, the 8(g) settlement funds were not derived from mineral leases on “state-owned” water bottoms, but rather from federal leases operating in the 8(g) zone. Furthermore, severance or production also took place in the 8(g) zone and not in St. Mary Parish.[2] Accordingly, plaintiff has no right of action to claim ownership of any of the 8(g) settlement revenues. We find no error in the trial court’s judgment dismissing plaintiff’s petition and affirm it at plaintiff’s costs.
AFFIRMED.

. Named as defendants in plaintiffs suit were Mary Evelyn Parker, State Treasurer of the State of Louisiana, in her official capacity as Treasurer of the State of Louisiana, and Edwin W. Edwards, Governor of the State of Louisiana, in his official capacity as Governor of the State of Louisiana.

. We note that under the "rule of capture,” which applies to the outer continental shelf, the owner of land has the right to capture oil and gas underlying his property, including that which migrates to his property from another’s land.